IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CATHERINE E. VINCENT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3-06-CV-0606-M |
| | § | |
| AZTEC FACILITY SERVICES, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Catherine E. Vincent's Motion for Partial Summary Judgment and Defendant Aztec Facility Services' Cross-Motion for Partial Summary Judgment, both predicated on the applicability of the *Faragher/Ellerth* defense. Also before the Court is Defendant's Motion for Partial Summary Judgment requesting summary judgment in favor of Aztec on Vincent's retaliation claims and on Vincent's assault and battery claim. Having considered the Motions, briefs, and supporting evidentiary submissions of all parties, for the reasons set forth below, the Court concludes that there are genuine issues of material fact as to the applicability of the *Faragher/Ellerth* defense, Vincent's retaliation claim with respect to her termination, and Vincent's assault and battery claim. The Court finds there are no genuine issues of material fact as to Vincent's retaliation claim with respect to her transfer. Accordingly, the Court **DENIES** Aztec's and Vincent's Motions for Partial Summary Judgment on the basis of the *Faragher/Ellerth* defense, **GRANTS** Aztec's Motion on Vincent's retaliation claim with respect to her transfer, **DENIES** Aztec's Motion on Vincent's retaliation claim with respect to her termination, and **DENIES** Aztec's Motion with respect to Vincent's assault and battery claim.

1

# I. FACTUAL BACKGROUND

This employment discrimination suit arises from a claim by Plaintiff Catherine E. Vincent against Defendant Aztec Facility Services ("Aztec") alleging sexual harassment by a supervisor during her employment with the Defendant. Aztec provides janitorial services at facilities throughout Texas. On June 14, 2005, Vincent began working for Aztec as a janitor at the Lockheed Martin facility ("Lockheed") in Grand Prairie, Texas. The man who interviewed and hired Vincent for the position, Michael Buchanan, became her immediate supervisor. Vincent alleges that soon thereafter Buchanan began making sexually suggestive remarks to her during her shifts. Vincent claims that she consistently rejected Buchanan's suggestions and repeatedly asked him to stop his inappropriate behavior.

Vincent claims that in August of 2005 Buchanan grabbed her around the waist, pulling her body against his, and rubbed his groin against her rear-end in a humping motion. Vincent claims that the alleged continuing harassment resulted in an altercation between herself and Buchanan on the night of August 30, 2005. Dee Mitchell, a Lockheed employee, heard shouting and came out of her office and questioned Buchanan about the argument. Mitchell then suspended Vincent's security clearance, effectively barring her from the Lockheed facility.

The next day, Vincent went to Aztec's Grand Prairie office and filed a complaint against Buchanan. She was told not to return to work until Aztec had completed its investigation. Aztec directed Coral Olsen, its Human Resources Manager, to begin an immediate investigation. During her investigation, Olsen interviewed Vincent, Buchanan, and several other employees, but she did not interview Mitchell. In her testimony, Olsen acknowledged that she did not follow standard procedure in conducting the investigation, and that, in an effort to protect Aztec, she omitted information from her notes and her final report. Despite Olsen's recommendation that Buchanan be terminated, he remained the supervisor at the Lockheed facility. Although Olsen

was fired shortly after the investigation, before she left Aztec she signed an affidavit stating she "could not substantiate any of Ms. Vincent's complaints."[1] Olsen Aff. 4.

At the conclusion of the investigation, Vincent was not terminated, but instead was transferred to the UT Southwestern Medical Center. Her new position involved the same job duties and the same rate of pay. However, Vincent alleges that she had to travel thirty-six more miles each day to get to and from work, which resulted in an average weekly cost of $27.00 in gas and wear and tear to her car.

Almost a month later, on a Monday evening, Vincent became ill at work. Vincent did not return for the rest of the week, and Aztec alleges that neither Vincent nor her husband contacted Aztec during this time, except when Vincent came into the office the following Friday to pick up her check. Aztec argues that Vincent's absence without notice violated the company's policy. The Aztec Facility Services Employee Handbook states that "[a]n employee who fails to contact his/her supervisor regarding his/her absence may be considered as having voluntarily resigned."

Vincent argues that she contacted Aztec about her absence. Vincent's husband states that he called and informed Vincent's supervisor that Vincent's doctor had ordered her to stay home through the rest of the week. On the same Friday that Vincent picked up her check, Vincent filed a complaint with the EEOC. The following Monday, Aztec Facilities Regional Operation Manager, Ron Reyes, met with Vincent and her husband and told Vincent that her employment relationship with Aztec was over because she had failed to contact her supervisor during her absence.

## II. PROCEDURAL BACKGROUND

Vincent filed suit against Aztec on April 5, 2006, alleging sexual harassment and

---

[1] Olsen now alleges that her affidavit was incomplete, but that she felt it was her "responsibility to protect the company" during the investigation. (Olsen Oral Dep. 9.)

retaliation under Title VII, and assault and battery. She is seeking compensatory damages, damages for injuries suffered as a result of the alleged physical assault, $100,000 for emotional distress and mental anguish, and court costs.

On April 16, 2007, Vincent moved for partial summary judgment. With this Motion, Vincent is seeking to preclude Aztec from asserting a *Faragher/Ellerth* affirmative defense to avoid vicarious liability for Buchanan's actions. Aztec responded on April 25, 2007, arguing that Vincent had failed to demonstrate that a "tangible employment action" occurred and claiming its entitlement to the *Faragher/Ellerth* affirmative defense. Aztec also filed a Cross-Motion for Partial Summary Judgment, alleging that it had met both prongs of the *Faragher/Ellerth* defense on the summary judgment evidence and was thus entitled to judgment as a matter of law on Vincent's sexual harassment claims.

Additionally before the Court is Aztec's Motion for Partial Summary Judgment on Vincent's retaliation claim with respect to her transfer, on Vincent's retaliation claim with respect to her termination, and on Vincent's assault and battery claim.

### III. ANALYSIS

A. Legal Standard

***Summary Judgment Standard***

Summary judgment is warranted when the facts and law, as reflected in the pleadings, affidavits, and other summary judgment evidence, show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *See* FED. R. CIV. P. 56; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements

4

of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322–25). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

The nonmovant is then required to go beyond the pleadings and designate specific facts that prove the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch Props.*, 140 F.3d at 625; *See also Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005). "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991).

*Faragher/Ellerth Defense*

Section 703(a) of Title VII forbids "an employer. . . (1) to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment can be a violation of Title VII. *See Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). The Fifth Circuit and the Supreme Court have created a road map for analyzing whether an employer has violated Title VII through the sexually harassing acts of its employees. *Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000) (citing *Burlington Indus.*, 524 U.S. 742 and *Faragher v. City of Boca Raton*, 524 U.S. 775).

The threshold question is whether the plaintiff employee suffered a "tangible employment

action." *Id.* If an employee can show that a tangible employment action resulted from the employee's response to sexual harassment, the employer is vicariously liable, *ipso facto*, for the actions of the supervisor under Title VII; no affirmative defense will be heard. *Id.* at 284.

If the employee did not suffer a tangible employment action, the suit is a "hostile environment" case. The first question in a hostile environment case is whether the alleged sexual harassment was so "severe and pervasive as to alter the conditions of employment and create a hostile work environment." *Faragher* 524 U.S. at 786. If the answer to that question is negative, the employer will not be liable for the actions of its employee. *Casiano*, 213 F.2d at 284.

If the sexual harassment is severe and pervasive, then the employer may assert the *Faragher/Ellerth* affirmative defense to avoid vicarious liability for the actions of its employee. *Id.* The defendants must prove they "exercised reasonable care to prevent and correct promptly" any sexually harassing behavior, and the plaintiff employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id*. If the employer can successfully establish both elements of the *Faragher/Ellerth* defense, then it will not be vicariously liable for its employee's actions.

B.      Plaintiff's Motion and Defendant's Cross-Motion for Partial Summary Judgment on the basis of the *Faragher/Ellerth* Defense

Vincent argues that Aztec is not entitled to the *Faragher/Ellerth* defense because: (1) she suffered a tangible employment action, making the defense unavailable to the Defendant; (2) Aztec did not exercise reasonable care to prevent and promptly correct the harassment; and (3) she did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by Aztec. Pl.'s Mot. for Partial Summary Judgment 1-2. Aztec denies the existence of a tangible employment action and alleges that it has met both prongs of the *Faragher/Ellerth* defense on the summary judgment evidence and is entitled to judgment as a matter of law on

Vincent's sexual harassment claims.

*Tangible Employment Action*

Vincent argues that Aztec may not assert the *Faragher/Ellerth* defense because a "tangible employment action" has occurred. On August 30, 2005, Vincent was transferred to the UT Southwestern Medical Center after her security clearance for the Lockheed facility was revoked by Mitchell, an employee of Lockheed. While it is undisputed that Vincent's title, responsibilities and pay were unchanged, the transfer caused Vincent to incur an additional expense of $27 per week in travel costs.

The Supreme Court has defined a tangible employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Burlington Indus., Inc.,* 524 U.S. at 761. A mere lateral transfer does not constitute a tangible employment action. *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999); *see also Harper v. City of Jackson Mun. Sch. Dist.*, 149 F. App'x 295, 299 (5th Cir. 2005) (finding no tangible employment action where a teacher was transferred to a different school but retained the same rate of pay). Likewise, the Fifth Circuit has found no tangible employment action when an employee was denied access to training that required passage of an exam the employee had not qualified to take. *Casiano v. AT&T Corp.*, 213 F.3d 278, 284-85 (5th Cir. 2000). Here, Aztec had no choice but to transfer Vincent, as the client Lockheed had denied her access to its facilities.

As a matter of law, Plaintiff's allegations that her complaint resulted in her transfer from Lockheed to UT Southwestern, with a concomitant increase in travel costs, do not constitute a tangible employment action. Having found no tangible employment action, the Court must now consider the availability of the *Faragher/Ellerth* defense, as Aztec has not disputed that the

alleged sexual harassment could be considered "severe and pervasive" enough to result in a hostile work environment.

***Elements of the Faragher/Ellerth Defense***

The *Faragher/Ellerth* affirmative defense contains two essential prongs, and genuine issues of material fact on either prong would preclude summary judgment for Aztec. A finding that Aztec could not prove one of the prongs would allow partial summary judgment for Vincent, precluding Aztec from raising the defense.

***Prevention and Correction of the Harassment***

The Supreme Court has explained that Title VII was designed to encourage "antiharassment policies and effective grievance mechanisms." *Ellerth*, 524 U.S. at 764. Where an employer's harassment policy and response to allegations of harassment are "both reasonable and vigorous," it has satisfied the first element of the Faragher/Ellerth defense. *Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969 (5th Cir. 1999). Aztec maintains that it had an effective sexual harassment policy in place at the time of the alleged incidents and that immediately after Vincent's complaint was filed, it began an investigation into her allegations. Vincent acknowledges that she received Aztec's employee handbook containing its anti-harassment policy and that she attended a training session on the policy.

Vincent argues that Aztec's policy is not sufficient to avoid vicarious liability and that Aztec did not exercise reasonable care to prevent or respond to the harassment. According to Olsen, Aztec did not provide training to supervisors on how to handle sexual harassment. Olsen Dep. 14. While investigating Vincent's allegations, Olsen did not interview Mitchell, the only witness to the final confrontation between Vincent and Buchanan. Olsen acknowledged that she did not follow the standard procedure for investigating sexual harassment complaints and also that she conducted the investigation with the intent to protect Aztec. A trier of fact may have

8

reasonable doubts as to whether Aztec's policy and its investigation were "reasonable and vigorous." Thus, the Court finds that there is a genuine issue of material fact regarding whether Aztec exercised reasonable care to promptly investigate and address the reported sexual harassment of Vincent.

Because there is a genuine issue of material fact regarding the first prong of the *Faragher/Ellerth* defense, the Court is not required to consider whether the second prong is satisfied for the purpose of considering summary judgment for Aztec on the affirmative defense. Only if both prongs were satisfied as a matter of law would summary judgment for Aztec on the *Faragher/Ellerth* defense be appropriate. Thus, Aztec's Cross-Motion for Partial Summary Judgment on Vincent's sexual harassment claims is **DENIED**.

***Failure to Take Advantage of Preventive or Corrective Opportunities***

In the alternative, if it were established that Vincent either took advantage of Aztec's available preventive and corrective measures, or that she acted reasonably in failing to take advantage of those measures, then Aztec would not be entitled to assert the affirmative defense. This Court has already found that a question of fact remains as to the effectiveness of Aztec's harassment policy and implementation.

An employee's unreasonable failure to take advantage of preventative or corrective opportunities defeats a claim of hostile work environment sexual harassment. *Thompson v. Naphcare, Inc.*, 117 Fed. Appx. 317, 323-24 (5th Cir. 2004). The Fifth Circuit has not defined what length of time is reasonable for an employee to wait to report sexual harassment, but it has emphasized that promptness is important. *Indest v. Freeman Decorating*, 164 F.3d 258, 265 (5th Cir. 1999) (holding that nine months was too long to wait to report sexual harassment). In one situation, where the employee was given a handbook with a complaint procedure and she filed a complaint almost two months after being harassed, the court found that she had not acted

9

reasonably. *Thompson,* 117 Fed. Appx. at 324. However, the Court has found that waiting three months to report a sexual harassment claim was not excessive in other cases. *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 525-26 (5th Cir. 2001); *Watts v. Kroger Co.*, 170 F.3d 505, 510 (5th Cir. 1999).

Vincent alleges that she was repeatedly sexually harassed, beginning on July 10, 2005. She first complained on August 31, 2005. Vincent claims that Buchanan repeatedly reminded her that he had the power to hire and fire, whenever she said she wanted to report his behavior to Dee Mitchell. Vincent also explained her delay in reporting by expressing confusion about how and where to file a complaint. Pl.'s Reply 7. Aztec's employee handbook did not have a telephone number employees could call to file complaints and did not list the names of personnel to contact with sexual harassment complaints. Reyes Dep. 16-17. A phone number for the corporate office was posted by the time clock at the Lockheed facility. *Id.* The Court finds that a reasonable trier of fact could find a genuine issue of material fact as to whether Vincent acted reasonably in delaying her report of Buchanan, or whether she took advantage of Aztec's available preventive or corrective opportunities.

Having determined that Vincent's transfer does not constitute a tangible employment action and that there are genuine issues of material fact as to both prongs of the *Faragher/Ellerth* defense, the Court is of the opinion that Aztec is entitled to assert the affirmative defense. Thus, Vincent's Motion for Partial Summary Judgment to strike the affirmative defense is therefore **DENIED**.

C.      Aztec's Motion for Partial Summary Judgment on Retaliation Claims

Vincent alleges that Aztec retaliated against her for her complaints to Aztec and to the EEOC, by transferring her, and by terminating her employment. Although the Court found no tangible employment action in the transfer, separate analysis is required to address Vincent's

claim of retaliation because a separate action for retaliation, unrelated to sexual harassment, is available under Title VII. The Supreme Court recently clarified that the 'adverse employment actions' that can support a retaliation claim are broader than the 'tangible employment actions' that can support a discrimination claim, holding that '"[t]he scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm.'" *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2414 (2006).

To make a prima facie case of retaliation, Vincent must show: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal nexus between the protected activity and the adverse employment action. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002). Once an employee has established a prima facie case, the burden then shifts to the employer to demonstrate a "legitimate, non-retaliatory reason for the adverse employment action." *Russell v. Univ. of Texas*, 2007 U.S. App. LEXIS 15468 (5th Cir. 2007). If the employer can demonstrate such a reason for the action, then the employee must show that the proffered non-retaliatory purpose is "merely a pretext for the real, [retaliatory] purpose." *Id.*

Vincent meets the first element of retaliation because she filed a sexual harassment complaint with Aztec and with the EEOC, which is a protected activity under Title VII Civil Rights Act of 1964. It is unlawful for "an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Vincent claims that both her transfer and her termination were retaliation for this protected activity, and Aztec moves for Partial Summary Judgment on both alleged forms of retaliation. The Court will address the transfer and the termination of employment separately.

*Vincent's Claim of Retaliation with Respect to Her Transfer*

Prior to *Burlington Northern*, the Fifth Circuit had held that only an ultimate employment decision could constitute an adverse employment action. *Russell*, 2007 U.S. App. LEXIS 15468, *24. In *Burlington Northern*, the Supreme Court rejected that standard and held that an employee suffers an adverse employment action if "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 126 S. Ct. at 2415 (internal quotation marks omitted). Nevertheless, the Court explained in no uncertain terms: "We speak of material adversity because we believe it is important to separate significant from trivial harms." *Id.*

Vincent's transfer, as discussed *supra*, could not be classified as materially adverse in a manner consistent with *Burlington*. Aztec transferred Vincent from her placement at Lockheed to UT Southwestern, a location where Buchanan, the alleged harasser, did not work. Additionally, Vincent's security clearance had been revoked by Lockheed, and she was no longer capable of working at that facility. The incidental travel expenses resulting from her new assignment are insufficient to constitute significant harm.

Likewise, as the Court explained in *Burlington*, the anti-retaliation provision seeks to "prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms . . . by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." *Id.* Because Vincent was barred from the facility by Lockheed before her harassment complaint was filed, the causal element between employer interference and the transfer is missing as a matter of law.

For the reasons stated above, Aztec's Motion for Partial Summary Judgment is **GRANTED** with respect to Vincent's claim that her transfer was an act of retaliation.

*Vincent's Claim of Retaliation with Respect to Her Termination*

Aztec also moves for Partial Summary Judgment on Vincent's claim that she was terminated in retaliation for filing a sexual harassment complaint and for filing an EEOC charge. Vincent makes a prima facie case of retaliation with respect to her termination. Her complaint of sexual harassment constitutes a protected activity. *See* 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 2000e-3(a). Her termination constitutes an adverse employment action. *See Burlington*, 126 S.Ct. at 2409. Whether Vincent's termination was in retaliation for her filing of the complaints is the only issue in dispute.

Vincent notes the relatively close timing between her complaints and her termination as evidence of a causal connection between the protected activity and the adverse employment action. Little over a month passed from the date when Vincent lodged her sexual harassment complaint with Aztec and her termination. Additionally, Vincent filed a complaint with the EEOC on a Friday, and she was terminated the following Monday. "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). Although Aztec contends that it was not aware of the EEOC filing when it terminated Vincent, it was certainly aware of the internal complaint. The Court finds that the close timing between her two complaints and her termination preclude summary judgment against her on the causation element.

Because Vincent has established a prima facie case of retaliation, the burden of production shifts to Aztec to articulate a legitimate, non-retaliatory reason for Vincent's termination. Aztec claims it terminated Vincent because she was absent from work for four days without explanation. Aztec references its employee handbook, which states that "[a]n employee who fails to contact his/her supervisor regarding his/her absence may be considered as having

voluntarily resigned." Aztec also offers the affidavit of its Regional Manager, Ron Reyes, who explains that he terminated her employment: "I made the decision that because of Ms. Vincent's failure to abide by the 'no call/no show' policy, she had essentially quit her job and had terminated her relationship with Aztec." Reyes Aff. ¶ 9. Reyes explained that he met with Vincent on Monday, October 3, 2005 to inform her of her termination, and that at that time, she did not have any explanation for her lack of communication about her medical condition. *Id.* This constitutes evidence of a legitimate, non-retaliatory reason for the termination.

However, Vincent presents evidence that such explanation is false. Vincent submits an affidavit from Benjamin Vincent, the Plaintiff's husband, stating that "my wife was feeling ill so I called her boss Mr. Jamie Javier to inform him that my wife had gone to the doctor and was placed on a work restriction until October 3, 2005. I told him I had a note from the doctor." Benjamin Vincent Aff. ¶ 6. While Reyes acknowledged communications between Mr. Vincent and Javier about Ms. Vincent's health and resulting bedrest, it is unclear whether those communications were sufficient to comply with the Aztec company policy. Reyes Dep. 76-77. This evidence creates a question precluding summary judgment in favor of Aztec.

Aztec's Motion for Partial Summary Judgment on Vincent's retaliation claim with respect to her termination is therefore **DENIED**.[2]

D.  Aztec's Motion for Partial Summary Judgment on Assault and Battery Claim

Aztec moves for summary judgment on Vincent's assault and battery claim, arguing that an employer is not vicariously liable for its employee's intentional torts. Vincent responds that summary judgment should be denied because Aztec's employee, Buchanan, was its vice-principal.

---

[2] Vincent and Aztec both filed Motions to Strike Evidence. The Court does not reach the Motions because they both concerned evidence not relevant to the Court's conclusion.

"As a general rule in Texas, an employer cannot be vicariously liable for the intentional torts of assault or battery perpetrated by its employee because such acts are not ordinarily within the course and scope of an employee's authority or employment." *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 494 (Tex. App.—Fort Worth 2002, no pet.). No one contends that the alleged assault and battery was within the course of the Buchanan's employment. Rather, Vincent focuses on Buchanan's alleged status as Aztec's vice-principal. "When actions are taken by a vice-principal or a corporation, those acts may be deemed to be the acts of the corporation itself." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999).

> A vice-principal represents the corporation in its corporate capacity, and includes persons who have authority to employ, direct, and discharge servants of the master, and those to whom a master has confided the management of the whole or a department or division of his business.

*Id*. To determine if an employee is acting as a vice-principal, courts consider the extent of the individual's authority. *Id.* For example, a supply operations supervisor, in charge of eight employees, was held to be a vice-principal because he was the most senior manager at the facility and he had the authority to hire, direct, and fire employees. *Id.* Conversely, the executive secretary to a company's owner with the authority to direct the actions of several employees was not a vice-principal because "having some supervisory authority over others without the ability to hire and fire is not enough." *Garrett v. Great W. Distrib. Co. of Amarillo*, 129 S.W.3d 797, 802 (Tex. App.—Amarillo 2004, pet. denied).

Here, Buchanan was an assistant operations manager at Aztec who worked at the Lockheed Martin facility. Reyes Aff. ¶ 4. His job was to supervise the janitorial work of Aztec employees at the facility during his shift. *Id*. According to the Aztec Facility Services Employee Handbook, supervisors like Buchanan are in charge of conducting annual performance reviews, scheduling employee vacation time in accordance with the facility's needs, and managing and

recording employee absences and tardiness. Aztec Empl. Handbook at 10, 12, 14, 20. It appears that Buchanan also had hiring authority. Vincent, in her statement to Aztec, explained that Buchanan interviewed her and processed her identification card for employment. The only dispute is whether Buchanan had authority to fire employees without approval from human resources. There is testimony that Buchanan needed approval from human resources (Reyes Dep 11.) and conflicting evidence in Aztec's response to Vincent's interrogatories, which noted that Buchanan had the authority to hire and fire as assistant operations manager. Aztec's Resp. to Pl.'s Interrogs. 5. Given the interrogatory responses, there is at least a genuine issue of material fact as to whether Buchanan was Aztec's vice-principal. Therefore, Aztec's Motion for Partial Summary Judgment with respect to Vincent's assault and battery claim is **DENIED**.[3]

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Aztec's and Vincent's Motions for Partial Summary Judgment on the basis of the *Faragher/Ellerth* defense, **GRANTS** Aztec's Motion on Vincent's retaliation claim with respect to her transfer, **DENIES** Aztec's Motion on Vincent's retaliation claim with respect to her termination, and **DENIES** Aztec's Motion with respect to Vincent's assault and battery claim.

  **SO ORDERED.**

  **DATE:** September 12, 2007.

_Barbara M.G. Lynn_
**BARBARA M.G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**

---

[3] Vincent also argues that Aztec's Motion for Summary Judgment on Vincent's assault and battery claim should be denied under a theory of ratification. Because Aztec's Motion is denied on another basis, the Court does not reach Vincent's ratification argument.